ı  ›
ı
.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------X

MCM PRODUCTS USA, INC.,

                          Plaintiff,                16 Civ. 1616

       -against-                                    OPINION

BRIAN BOTTON and ELIZABETH KORN, d/b/a
"Pure," "Pure Atlanta," and "Pure Retail
Group," and PURE DENIM INC.,

                          Defendants.

---------------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiff

          LAW OFFICE OF WILLIAM COUDERT RAND
          501 Fifth Avenue, 15th Floor
          New York, NY 10017
          By:  William Coudert Rand, Esq.


          Attorneys for Defendants

          BECKER & POLIAKOFF LLP
          45 Broadway, 8th Floor
          New York, NY 10006
          By:  James J. Mahon, Esq.
               Vincenzo M. Mogavero, Esq.
               Oliver Edwards, VII, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/19/16

**Sweet, D.J.**

Plaintiff MCM Products USA, Inc. ("MCM") has moved pursuant to Rules 12(b)(6), 8, and 9 Fed. R. Civ. P. to dismiss the counterclaims of defendants Brian Botton ("Botton") and Elizabeth Korn ("Korn"), d/b/a/ "Pure," "Pure Atlanta," and "Pure Retail Group," and Pure Denim Inc. ("Pure Denim" collectively "Pure Stores" or the "Defendants"). The Defendants have cross moved pursuant to U.S.C. § 1404 to transfer this action to the United States District Court for the Northern District of Georgia. Based on the conclusions set forth below, the motion of the Plaintiff to dismiss the counterclaims of the Defendants is granted in part and denied in part. The cross motion of the Defendants to transfer this action is denied.

**Prior Proceedings**

MCM filed its complaint in the Supreme Court of the State of New York, County of New York on February 5, 2016 alleging that it had sold and delivered goods to Pure Stores for which it had not been paid $333,489 (Complaint "Compl." at ¶¶ 19, 22.) Defendants on March 2, 2016 removed the action to this

1

court on diversity grounds and filed their answer and counterclaims ("CC") on March 22, 2016.

The Defendants' CC sets forth the following allegations:

Defendant Pure Stores sells luxury goods and has stores in Atlanta and Houston located in malls featuring luxury goods. (CC at ¶¶ 1-3.) The Pure Stores have purchased MCM luxury goods, including suit cases and handbags, from MCM since February 2013 and sold them at Defendants' stores. (CC at ¶¶ 8-10.)

In October 2014, MCM officer Patrick Valeo ("Valeo") visited the Atlanta Pure Store, and met Lizabeth Korn ("Korn") there and Korn asked Valeo whether MCM planned to open a retail store in Atlanta or elsewhere, and Valeo denied that MCM had any such plans. (CC at ¶ 13.) In February 2015, Valeo visited the Houston Pure Store, and Botton asked Valeo if MCM planned to open a store in Houston or elsewhere, and Valeo denied that MCM had any such plans. (CC at ¶ 14.) In the first week of February 2015, as a necessary part of planning Pure Stores' usual wholesale orders for the upcoming season, Korn asked MCM

2

employees whether MCM planned to open its own retail locations or sell retail goods online, and was told by the MCM employees that MCM had no such plans, and that she should expect "business as usual." (CC at ¶ 15.) On or about March 1, 2015, MCM opened its own retail store in the multi-level Houston Galleria Mall (the "MCM Houston Store"). (CC at ¶ 16.)

On or about the same date, MCM began to sell retail goods through a website, viewable at www.mcmworldwide.com (the "MCM Website"). (CC at ¶17.) The opening of the MCM Houston Store and the MCM website damaged Pure Denim's retail sales through more than mere competition; they did so by undercutting the prices of MCM goods at the Pure Houston Store by 10% or more. (CC at ¶¶ 20-22.) In some cases the MCM Houston Store discounted the retail price of MCM items below the wholesale price at which MCM had already sold the products to the Pure Stores. (CC at ¶ 24.)

On July 16, 2015, Pure Stores owed money to MCM and accordingly Korn sent an email (the "Offer Email") in which she agreed to make a $150,000 payment on the outstanding and delinquent receivable through a Pure Denim credit card, contingent on four conditions: 1) that MCM ship certain items

already ordered but were on credit hold due to the delinquency; 2) that MCM agree to the return of certain other items "alleged" to be damaged for credit, 3) that MCM approve the "swap" of slow-selling goods with other "more current" inventory, and 4) the "[c]ontinuation of business as usual in all Pure accounts currently opened." (CC at ¶ 29.) After receiving the Offer Email, MCM charged the Pure Denim credit card in the amount of $150,000, but did not ship the items referred to in the Offer Email and refused to accept and issue credit for the damaged items referred to in the Offer Email and to carry out the swap referred to in the Offer Email, and did not continue "business as usual." (CC at ¶¶ 29-33.) On August 13, 2015, MCM stated to Defendants that it was ending their business relationship and would no longer sell goods to the Pure Stores. (CC at ¶ 36.)

On or about November 1, 2015, MCM opened a retail store one floor below the Pure Atlanta Store (the "MCM Atlanta Store"). (CC at ¶ 38.) Afterwards, as in Houston, customers began coming into the Pure Atlanta Store to return MCM-branded items after learning that the MCM Atlanta Store and/or MCM Website was offering precisely the same item at a discount. (CC at ¶ 39.)

4

Between November 1, 2015 and the date of filing of the counterclaims, MCM interfered with Pure Denim's business at the Pure Atlanta Store and elsewhere in other ways. (CC at ¶ 40.) MCM employees loitered outside of Pure Retail Locations, soliciting business from Pure Denim customers as they left. (CC at ¶ 41.) Employees of the MCM Atlanta store have repeatedly stated to customers that Pure Atlanta carries counterfeit MCM goods and/or defective MCM goods. (CC at ¶ 42.)

The Counterclaims seek damages of $333,489 based on Counterclaim I alleging fraudulent inducement; Counterclaim II breach of contract; Counterclaim III defamation; Counterclaim IV tortious interference with business relations; Counterclaim V breach of the covenant of good faith and fair dealing; Counterclaim VI unfair competition; Counterclaim VII unjust enrichment; and, Counterclaim VIII punitive damages.

The instant motions were taken on submission and marked fully submitted on June 2, 2016.

**The Applicable Standard**

5

On a motion to dismiss pursuant to Rule 12(b), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30,

2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120
(2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp.
2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, No. 11-3020,
2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings,
however, "must contain something more than . . . a statement of
facts that merely creates a suspicion [of] a legally cognizable
right of action." *Twombly*, 550 U.S. at 555 (citation and
internal quotation omitted).

The Court may order a Section 1404(a) transfer of a
case filed in the proper venue "[f]or the convenience of parties
and witnesses, in the interest of justice . . . to any other
district or division where it might have been brought." 28
U.S.C. § 1404(a). A Section 1404(a) motion places the burden of
proof on the Defendants and requires Defendants to demonstrate
"by a clear and convincing showing that transfer is proper."
*AGCS Marine. Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp.
2d 640, 645 (S.D.N.Y. 2011). Absent a "clear and convincing
showing" that the balance of factors favors Defendant's choice,
the Court will not disturb Plaintiff's forum choice. *Boehner v.
Heise*, 410 F. Supp. 2d 228, 241 (S.D.N.Y. 2006).

Courts undertake a two-part inquiry to decide whether a transfer is proper. *Lowe v. Housing Works, Inc.*, 2013 U.S. Dist. Lexis 70813 at 12 (S.D.N.Y. May 15, 2013) (court denied transfer); *Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*, 2006 U.S. Dist. LEXIS 14950, 2006 WL 846716, at *10 (S.D.N.Y. Mar. 29, 2006) (court denied transfer)(citing *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998)). First, the Court determines whether the action could have been brought in the proposed forum. *Id.* If so, the Court then determines whether the interest of justice and the convenience of witnesses make transfer appropriate. *Id.*

The second part of the inquiry requires the Court to consider the following factors: (1) the weight accorded to Plaintiff's forum choice; (2) the convenience of witnesses; (3) the convenience of the parties; (4) the location of, and ease of access to, relevant documents and sources of proof; (5) the locus of operating facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006); *Herbert Ltd. Partnership v. Electronic Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004) (also considering two other factors: (8) the familiarity of each

8

district with the governing law; and (9) judicial economy and
the interests of justice).

The burden is on the moving party to establish that
transfer is warranted and courts in the Southern District have
stated:

> That burden is heavy: "unless the balance is
> strongly in favor of defendant, the plaintiff's
> choice of forum should rarely be disturbed."

See *Paribas Corp. v. Shelton Ranch Corp.*, 742 F. Supp. 86
(S.D.N.Y. 1990) refusing to transfer case to Texas where events
at issue occurred in New York, Texas and Florida) (citing
*Rackman v. Texas Instruments, Inc.*, 712 F. Supp. 448, 450
(S.D.N.Y. 1989)).

## The Motion to Dismiss the Fraudulent Inducement Counterclaim is Granted in Part and Denied in Part

To state a claim for fraudulent inducement under New
York law, "there must be a knowing misrepresentation of material
present fact, which is intended to deceive another party and
induce that party to act on it, resulting in injury." *Gosmile,
Inc. v. Levine*, 81 A.D.3d 77, 915 N.Y.S.2d 521, 524 (1st Dep't
2010).

9

To survive a motion to dismiss, Pure Stores must
allege that MCM knew or should have known that their statements
were false. See, e.g., *Mandarin Trading Ltd. v. Wildenstein*, 16
N.Y.3d 173, 944 N.E.2d 1104, 1108, 919 N.Y.S.2d 465 (N.Y. 2011)
(in a claim for fraudulent misrepresentation, a plaintiff must
allege a misrepresentation or a material omission of fact which
was "false and known to be false"); *Johnson v. Nextel Commc'ns,
Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (noting that a claim for
fraudulent inducement requires a party to plead "specific facts
as to the fraud, including the misleading statements, speaker,
time, place, individuals involved, and specific conduct at
issue").

Defendants have alleged that MCM employees stated that
they had no intent to open retail stores in Atlanta or Houston,
but have not pled that all of these statements of opinion were
in fact false and made to deceive.

The counterclaim must satisfy the heightened pleading
standard for fraud claims required by Rule 9(b) of the Federal
Rules of Civil Procedure. To satisfy that standard, a complaint
must "allege facts that give rise to a strong inference of

10

fraudulent intent." *Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995). More specifically, it "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted); *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (dismissing fraud claims under Rule 9(b) because "nothing in the complaint explains with adequate specificity how those statements were actually false or misleading.").

Here, Pure Stores has not identified all the speakers, and fails to identify specifically "where and when the statements were made" or "why they are fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d at 290. For this reason, the fraudulent inducement claim with respect to the website is dismissed. Defendants allege that "MCM employees" denied that they planned to open stores or sell merchandise online. However, Defendants failed to identify the alleged source of this statement and such an unattributed statement cannot form the basis of a fraudulent inducement claim. See, *Schlenger v. Fid. Emp'r Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011)

11

("Plaintiffs failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9."); *City of Omaha v. CBS Corp.*, No. 08 Civ. 10816 (PKC), 2010 WL 1029290, at \*10 (S.D.N.Y. Mar. 16, 2010) ("[P]laintiffs cannot rest on their say-so in asserting that statements are fraudulent; they must explain why" (internal citation omitted)).

There are several statements that Defendants allege are examples of fraudulent inducement. First, Defendants have alleged that in October 2014 in Atlanta, Valeo intentionally misrepresented that MCM had no plans to open a store in Atlanta. (CC at ¶¶ 13-14.) This allegation does not adequately allege scienter because MCM applied for a building permit for the construction of its retail store in Atlanta on July 1, 2015, more than 8 months after the alleged fraudulent denial of a plan to open a store and MCM did not actually open the Atlanta store until November 1, 2015, approximately one year after the alleged fraudulent denial. (CC at ¶ 27.) Defendants' presumption that plans for the store in Atlanta were in place in October 2014 more than 8 months before plans for an Atlanta store were filed does not sufficiently plead scienter.

12

On the other hand, Defendants' allegation that in February 2015, Valeo visited the Houston store and fraudulently stated that MCM had no plans to open a Houston store (CC at ¶ 14) does state an adequate claim. In this case, the Houston store allegedly opened less than one month later on March 1, 2015. (CC at ¶ 16). MCM could not reasonably have planned, rented, stocked, and set up a retail store in less than one month. Unlike other statements, the speaker, time, and place are all identified in this allegation and it therefore survives a motion to dismiss. *Lerner v. Fleet Bank, N.A.*, 459 F.3d at 290.

Therefore the fraudulent inducement counterclaims are dismissed for all alleged statements, except for the February 2015 statement regarding the Houston store.

**The Motion to Dismiss the Breach of Contract Claim is Denied**

Defendants have alleged that Korn sent an Offer Email in which she agreed to make a $150,000.00 payment through a Pure Denim credit card, contingent on four conditions: 1) that MCM ship certain items already ordered; 2) that MCM agree to the return of certain other damages items for credit, 3) that MCM finally approve the "swap" of slow-selling goods with others,

13

and 4) the "[c]ontinuation of business as usual in all Pure accounts currently opened." (CC at ¶ 20.)

Upon receipt of this offer, MCM accessed the Pure Denim credit card, and charged the $150,000 identified in the Offer Email. (CC at ¶¶ 29-30). After receiving payment, MCM refused to abide by the conditions upon which the offer was made. (CC at ¶ 56.)

The issue is whether the $150,000 offer constituted accord and satisfaction as a new contract discharging any obligations under the original contract. In New York, "[T]he acceptance of a check in full settlement of a disputed unliquidated claim without reservation operates as an accord and satisfaction . . . ." *Complete Messenger & Trucking Corp. v. Merrill Lynch Money Markets, Inc.*, 169 A.D.2d 609, 611, 565 N.Y.S.2d 794 (1st Dep't 1991). However, these agreements are only enforceable when "the person receiving the check has been clearly informed that acceptance of the amount offered will settle or discharge a legitimately disputed unliquidated claim." *Id.* (citing *Merrill Lynch Realty/Carll Burr, Inc. v. Skinner*, 63 N.Y.2d 590, 596, 483 N.Y.S.2d 979, 473 N.E.2d 229 (1984), *rearg. denied*, 64 N.Y.2d 885, 487 N.Y.S.2d 1029, 476 N.E.2d 1008).

14

On the pleadings with the limited record before the
Court, it is not clear whether Defendants "clearly informed"
Plaintiff that this offer would settle a disputed unliquidated
claim. Further discovery on the communications surrounding this
Offer will demonstrate whether there was valid accord and
satisfaction. Therefore, the motion to dismiss is denied.

**The Motion to Dismiss the Defamation Counterclaim is Granted**

Defendants allege that Plaintiff's employees defamed
Defendants by stating that their merchandise was counterfeit and
defective. To state a claim for defamation, a plaintiff "must
allege (1) a false statement about the plaintiff, (2) published
to a third party without authorization or privilege, (3) through
fault amounting to at least negligence on [the] part of the
publisher, (4) that either constitutes defamation per se or
caused 'special damages.'" *Thai v. Cayre Group, Ltd.*, 726 F.
Supp.2d 323, 329 (S.D.N.Y. 2010). A complaint alleging
defamation must give the defendant "'sufficient notice of the
communications complained of to enable him to defend himself.'"
*Ford v. Clement*, 834 F. Supp. 72, 78 (S.D.N.Y. 1993) (quoting
*Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)). Under

15

this standard, "a pleading is sufficient only if it 'adequately identifies the purported communication, and an indication of who made the statement, when it was made, and to whom it was communicated.'" *Amar v. Hillcrest Jewish Ctr.*, No. 05-CV-03290 (RRM) (RML), 2008 U.S. Dist. LEXIS 108180, 2009 WL 891795, at *7 (E.D.N.Y. Mar. 31, 2009) (quoting *Camp Summit of Summitville, Inc. v. Visinski*, No. 06 Civ. 4994, 2007 U.S. Dist. LEXIS 28496, 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16, 2007)).

A defamation or slander claim "is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Thai*, 726 F.Supp.2d at 329 (quoting *Scholastic, Inc. v. Stouffer*, 124 F.Supp.2d 836, 849 (S.D.N.Y. 2000)). A complaint that sufficiently alleges the occurrence of a false statement of fact must nevertheless be dismissed if it fails to also allege "who," "when," and "to whom" the alleged defamatory statements were made. *Reeves v. Cont'l Equities Corp. of Am.*, 767 F. Supp. 469, 473 (S.D.N.Y. 1991); see also *Krepps*, 588 F.Supp.2d at 484 (noting that failure to identify allegedly defamatory and slanderous statements were too generalized and, as such, insufficient to

16

state a claim); see also, *Nowak v. EGW Home Care, Inc.*, 82 F. Supp. 2d 101, 113 (W.D.N.Y. 2000).


    Here, the counterclaim for defamation alleges that an unidentified MCM employee told an unidentified customer of Defendants that the MCM goods sold by Defendants were counterfeit and defective. (CC at ¶¶ 41-42.) However, this defamation allegation is dismissed because it fails (a) to allege the name of the employee (or any facts identifying the employee) who allegedly made the statements; (b) to allege the names of the customers who heard the alleged defamatory statements; and (c) does not allege the date, time or specific location of the alleged defamatory statement. *Reeves v. Cont'l Equities Corp. of Am.*, 767 F. Supp. at 473 (dismissing a defamation claim because the Plaintiff did not specify "who made the comments nor to whom they were made" nor when they occurred). For these reasons, the defamation claim is dismissed.


**The Motion to Dismiss the Tortious Interference Counterclaim is Granted**

    Pure Denim alleges that MCM committed tortious interference by lowering retail prices for goods at MCM store locations in the same malls in Atlanta and Houston as Pure

17

Stores in order to undercut Pure Goods' prices. "To state a claim for tortious interference with business relations under New York Law, four conditions must be met: (i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose, or used dishonest, unfair or improper means; and (iv) the defendants' acts injured the relationship." *Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (internal citations omitted). The business relations need not be a formal contract, but may be a "continuing business or other customary relationship." *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998). "Along with demonstrating wrongful means, a plaintiff must also establish that the wrongful acts were the proximate cause of the rejection of the plaintiff's proposed contractual relations." *Jabbour v. Albany Med. Ctr.*, 237 A.D.2d 787, 790, 654 N.Y.S.2d 862 (3d Dep't 1997).

In this case, Pure must prove that MCM opening stores in the same mall with reduced prices to interfere with existing customers, "was not 'lawful' but 'more culpable' . . . the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d

18

1100, 785 N.Y.S.2d 359 (2004).  The Counterclaim Defendants have not proved that the actions MCM took interfered with Pure's business in a manner other than demonstrating "normal economic self-interest" in order to "reverse a period of business declines and make itself more profitable."  *Id.*  The important distinction between economic self-interest and tortious interference with business relationships is that in this case MCM "was not acting solely to hurt [Pure Stores]."  *Id.*

**The Motion to Dismiss the Breach of Covenant of Good Faith and Fair Dealing is Granted**

Defendants' counterclaim for breach of covenant of good faith and fair dealing is precluded by the breach of contract claim. *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 80-81 (2d Cir. 2002) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."). See, e.g., *Goldblatt v. Englander Commc'ns, LLC*, No. 06 Civ. 3208, 2007 WL 148699, at *5 (S.D.N.Y. Jan. 22, 2007) (collecting cases).

The counterclaim seeks damages for MCM's failure to provide the items in the "Offer Email." These are the damages

sought by the breach of contract claim which is based on the "Offer Email." Counterclaim Defendants also allege breach of the covenant of good faith and fair dealing for "contracts for the purchase of goods," but this statement is conclusory and does not sufficiently state the terms of these alleged contracts. (CC at ¶ 67.)  In fact, Counterclaim Defendants make clear that this allegation is about the Offer Email when it alleged in the count for breach of good faith and fair dealing that "MCM's breach of the agreement memorialized in the Offer Email has deprived Pure Denim of the benefit of other contracts for the sale of goods between the parties." (CC at ¶ 70.)

The Counterclaim is therefore precluded by the breach of contract claim since both concern the same factual allegations about the Offer Email.

## The Motion to Dismiss the Common Law Unfair Competition Counterclaim is Granted

Pure claims that MCM engaged in unfair competition by acting in bad faith and "falsely disparage[ing] both the goods sold by Pure Denim and Pure Denim's business in general." (CC at ¶ 73.) This allegation falls short of the basic "factual content that allows the court to draw the reasonable inference that the

20

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556).

Under New York law, an unfair competition claim encompasses a broad range of unfair practices. See *American Footwear Corp. v. Gen'l Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979). Although the law of unfair competition is "a broad and flexible doctrine" that has been described as "a form of commercial immorality," its reach is not without limits. *Roy Export Co. Establishment v. Columbia Broadcasting Sys.*, 672 F.2d 1095, 1105 (2d Cir. 1982). "[T]he essence of an unfair competition claim is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith." *Coca-Cola North America v. Crawley Juice, Inc.*, Nos. 09 CV 3259 (JG)(RML), 09 CV 3260 (KAM)(RML), 09 CV 3279 (ERK)(RML), 2011 U.S. Dist. LEXIS 52813 at \*6 (E.D.N.Y. May 17, 2011) (internal quotation marks and citations omitted); see *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634 (S.D.N.Y. 2012) ("a plaintiff asserting an unfair competition claim under New York common law must also show that defendant acted in bad faith"); *Computer Associates, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009) (holding that a plaintiff must show more than commercial unfairness).

21

"The tort is not all-encompassing . . . the New York
Court of Appeals in rejecting the notion that unfair competition
is equivalent to the amorphous term commercial unfairness has
stated that misappropriation of another's commercial advantage
is a cornerstone of the tort." *Computer Associates, Inc.*, 621 F.
Supp. 2d at 53 (internal quotation marks and citations omitted).
Notably, to act in "bad faith," one must exploit some
"commercial advantage which belonged exclusively to [another]."
*LoPresti v. Mass. Mut. Life Ins. Co.*, 30 A.D.3d 474, 820
N.Y.S.2d 275, 277 (2d Dep't 2006).

Here the factual allegations are that Plaintiff acted
in bad faith and "falsely disparaged" Defendants. These
allegations fall well short of bad faith as required for this
claim and instead are conclusory. At worst, Counterclaim
Defendants claims are commercial unfairness, which the Court of
Appeals has held is not sufficient for a claim of unfair
competition.

Defendants reference the Georgia Deceptive Trade
Statute in their brief, but Defendants did not plead a claim
under that statute, but instead under common law unfair

22

competition. (CC at ¶¶ 73-75.) For those reasons, the
Counterclaim for common law unfair competition is dismissed.

## The Motion to Dismiss the Unjust Enrichment Counterclaim is Granted

"The basic elements of an unjust enrichment claim in
New York require proof that (1) defendant was enriched, (2) at
plaintiff's expense, and (3) equity and good conscience militate
against permitting defendant to retain what plaintiff is seeking
to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
373 F.3d 296, 306 (2d Cir. 2004).

In this case, Counterclaim Defendants merely recite
the elements of the cause of action for unjust enrichment
stating in part, "MCM has nonetheless received a financial
benefit from the defamatory, fraudulent, and unethical behavior"
receiving a financial benefit at Pure Denim's expense and that
equity and good conscious require restitution. (CC at ¶¶ 77-79.)
This allegation is insufficient because under *Iqbal* a claim must
contain "factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*,
550 U.S. at 556). In other words, the factual allegations must

23

"possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted). This claim merely restates the elements of the cause of action and falls well short of the heft needed to show the Counterclaim Defendant is entitled to relief.

In New York courts "look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Paramount Film Distributing Corp. v. State*, 30 N.Y.2d 415, 421, 285 N.E.2d 695, 334 N.Y.S.2d 388 (1972). Even in the light most favorable to the non-moving Counterclaim Defendants, the unsubstantiated defamation claim has not conferred a benefit on Plaintiff that demonstrates tortious or fraudulent conduct sufficient to support a claim for unjust enrichment.

**The Motion to Dismiss the Punitive Damages Counterclaim is Granted**

Counterclaim Defendants brought a claim for punitive damages, but this claim is dismissed because there is no separate claim for punitive damages recognized under New York

24

law. *Melvin as Administratrix of the Estate of Rashad McNulty, v. County of Westchester*, Case No. 14-CV-2995 (KMK), 2016 WL 1254394, at *24 (S.D.N.Y. March 29, 2016) (Dismissing claim for punitive damages because "there is no separate claim for punitive damages recognized under New York law"); see also *Weir Metro Ambu-Serv., Inc. v. Turner*, 442 N.E.2d 1268, 1268 (N.Y. 1982) ("[P]unitive damages may not be sought as a separate cause of action.").

Punitive damages is also not a claim recognized under Texas or Georgia Law. *Stanissis v. DynCorp Int'l LLC*, 2015 U.S. Dist. LEXIS 172412 at * 37-38 (N.D. Tex. Dec. 29, 2015) (" A cause of action for punitive damages cannot be brought as a stand-alone claim."); *Smith v. Copeland,* 2010 U.S. Dist. LEXIS 51157, at * 33 (N.D. Ga. May 21, 2010) (finding that punitive damages are not a separate cause of action in Georgia).

Since there is no separate claim for punitive damages under the laws of New York, Texas, or Georgia, the separate counterclaim for punitive damages is dismissed.

**The Motion to Transfer this Action to the Northern District of Georgia is Denied**

25

MCM's choice of forum is entitled to deference. "[A]
plaintiff's choice of forum is presumptively entitled to
substantial deference," *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir.
2004), which "is even stronger where the chosen forum is also
the plaintiff's home." *Atl. Recording Corp. v. Project Playlist,
Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009). Where a
significant connection exists between the chosen forum and the
underlying events, further deference is warranted to a
plaintiff's forum choice. *Boehner*, 410 F. Supp. 2d at 241.

The Court should consider the following factors: (1)
the weight accorded to Plaintiff's forum choice; (2) the
convenience of witnesses; (3) the convenience of the parties;
(4) the location of, and ease of access to, relevant documents
and sources of proof; (5) the locus of operating facts; (6) the
availability of process to compel the attendance of unwilling
witnesses; (7) the relative means of the parties. *D.H. Blair &
Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006);
*Herbert Ltd. Partnership v. Electronic Arts Inc.*, 325 F.Supp.2d
282, 286 (S.D.N.Y. 2004) (also considering two other factors:
(8) the familiarity of each district with the governing law; and
(9) judicial economy and the interests of justice).

First, MCM's chosen forum is New York and that weighs in favor of denying the transfer motion.

Second, the convenience of the witnesses is balanced since the inconvenience of Defendants' witnesses upon trial in New York is balanced by the inconvenience of MCM's witnesses of trial in Georgia. Defendants admit in their opposition brief that several MCM witnesses would need to travel to Atlanta from New York.  No compelling reason has been established in favor of transfer relating to witnesses.

Third, the convenience of the parties does not weigh in favor of the transfer because Plaintiff's headquarters is located in New York and Pure Stores is a North Carolina corporation with their principal place of business in Atlanta. Transferring the action would be more convenient for Defendants, but less convenient for Plaintiff. Therefore, no compelling reason has been established to transfer for the parties.

Fourth, the documents for trial are located both in New York and Atlanta.  Plaintiff's documents are located in New York and Defendants' documents are in Atlanta. Further, courts have found that the "[t]he location of relevant documents is

27

largely a neutral factor in today's world of faxing, scanning, and e-mailing documents." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). This factor is balanced and does not weigh in favor of transfer.

Fifth, the locus of operative facts is neutral. While there were more facts in Atlanta in the Counterclaims, many of the claims centered in Atlanta were dismissed. The dispute about defamation having to do with offering lower prices and negatively describing the quality of Pure Stores clothes took place in Atlanta. Defendants allegedly came to New York several times to purchase goods. After dismissing many of the counterclaims that took place in Atlanta this factor is also fairly balanced with a slight edge to Atlanta because some facts relating to the contract disputes in Plaintiff's complaint are in Atlanta, such as goods Pure Stores and any invoices.

Sixth, there are witnesses in both New York and Atlanta, none of which have already indicated they will require a subpoena to appear. This factor does not weigh in favor of either party.

28

Seventh, the parties are both commercial business persons. The parties dispute whether MCM is slightly or significantly larger. MCM does have 200 stores in 35 countries, but Pure Stores is also a corporation with stores in multiple states in the United States. Given the relative size of the parties this factor slightly favors transfer.

Eighth, the familiarity of each district with the governing law cautions against transfer. The Plaintiff's claims to recover for the goods delivered to Defendants for which no payment was made are governed by New York law. Defendants' breach of contract counterclaim also is governed by New York law. This factor favors denial of the motion to transfer.

Ninth, judicial economy and interest of justice favors denial of transfer to Georgia since this court has become familiar with the issues presented and can provide a disposition as expeditiously as the parties' desire. This factor favors denial of the motion.

Overall, three factors weigh in favor of denying the motion to transfer and two factors weigh in favor of transfer. Most importantly, the Plaintiff chose New York as the forum and

29

benefits from the presumption of "substantial deference" for his

original choice of forum.  *Gross v. BBC*, 386 F.3d at 230.  There

is also no substantial interest weighing in favor of transfer.

Therefore, the motion to transfer the case is denied.

**Conclusion**

Based on the conclusions set forth above, Plaintiff's motion to dismiss Defendants' Counterclaims is granted in part and denied in part. Defendants' motion to transfer the case to the Northern District of Georgia is denied.

It is so ordered.

New York, NY
September / 6 , 2016

ROBERT W. SWEET
U.S.D.J.

31